IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NORMA M.,

    Plaintiff,

v.                                                                               Civ. No. 25-179 GBW

FRANK BISIGNANO,
*Commissioner of the Social
Security Administration*,

    Defendant.

## ORDER GRANTING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI"). *Doc. 12*. For the reasons explained below, the Court GRANTS Plaintiff's motion and REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI on September 1, 2021, alleging disability beginning August 20, 2021. Administrative Record ("AR") at 230. Plaintiff's application was denied on initial review on January 25, 2022, and again on reconsideration on August 24, 2023. AR at 83–91, 93–114. On April 4, 2024, a hearing was held by an Administrative Law Judge ("ALJ"). AR at 57–82. The ALJ issued an

unfavorable decision on June 20, 2024. AR at 18–30. The Appeals Council denied review on December 27, 2024, making the ALJ's denial the final decision of the Commissioner. AR at 1. On February 21, 2025, Plaintiff filed suit in this Court. *Doc. 1*.

## II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.2d at 800 (internal quotation marks omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ E̲valuation

### A. Legal Standard

For purposes of SSDI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520. If the Commissioner finds an individual disabled at any step, the next step is not taken. *Id.* § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, considering the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On June 20, 2024, the ALJ issued a decision denying Plaintiff's application for SSDI. *See* AR at 18–30. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 20, 2021, the alleged onset date. AR at 20.

At step two, the ALJ found Plaintiff had the following severe impairments: rheumatoid arthritis, osteoarthritis of the knee, polyarthralgia, chondromalacia of left knee, status post right hip replacement with residuals, asthma and migraines. AR at 21. The ALJ found that Plaintiff's hypercholesterolemia, high blood pressure, hyperthyroidism, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder were not severe. *Id*. She found that Plaintiff had mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. AR at 21–22. She found the medical opinions of psychiatric consultative examiners J. Rodriguez-Herrera, PhD, and E. Falkner, MSN, PMHNP-BC, not persuasive because they did not use "vocationally relevant" terms and were inconsistent with evidence from other sources. AR at 22–23.

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or equal the severity of an impairment

in the Listings. AR at 24–25. The ALJ determined that Plaintiff's joint abnormality, asthma, inflammatory arthritis, and migraines did not meet or equal listing-level severity. *Id*.

> At step four, the ALJ found Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) except occasionally stoop; no climbing ropes, ladders or scaffolds; occasionally climb ramps and stairs, crouch, crawl, kneel and balance on uneven, moving or narrow surfaces; frequently handle and finger; no work involving any exposure to extreme cold temperatures (defined as under 30 degrees) or excessive humidity (defined as over 80 percent).

AR at 25. In making this finding she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. AR at 26. However, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. The ALJ found the medical opinions of internal medicine consultative examiner V. Salgado, MD, and J. Wedel, PA-C, not persuasive because they were unsupported by physical examination findings and inconsistent with evidence from other sources. AR at 28–29.

The ALJ determined that Plaintiff could perform past relevant work as a phlebotomist (DOT 079.364.022, SVP 3, light, medium as performed) and medical assistant (DOT 079.362.010, SVP 6, light, medium as performed). AR at 30. The ALJ

therefore concluded that Plaintiff was not disabled from August 20, 2021, through the date of the decision. *Id*.

IV.  **PARTIES' POSITIONS**

Plaintiff asserts that the ALJ erred by (1) disregarding non-medical evidence of Plaintiff's subjective complaints, (2) improperly evaluating the medical opinions of J. Rodriguez-Herrera, PhD, and E. Falkner, MSN, PMHNP-BC, and (3) failing to consider the impact of Plaintiff's mental impairments on her RFC. *Doc. 12-2*. The Commissioner contends that the ALJ's decision applied the correct legal standards and was supported by substantial evidence. *Doc. 17*. Because the Court agrees that the ALJ's decision must be reversed for failure to adequately consider Plaintiff's mental impairments, the remaining two arguments are not addressed.

V.  **ANALYSIS**

   A.  **The ALJ failed to consider Plaintiff's mental impairments at step four.**

At step two of the sequential evaluation, the ALJ assessed mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. AR at 21–22. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the

>sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

AR at 23. However, the subsequent RFC assessment included no discussion of Plaintiff's mental symptoms or limitations, either those self-reported by Plaintiff or those supported by the medical evidence. *See* AR at 25–29.

Steps two and four require distinct analyses, and an ALJ may not "simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). Limitations identified under the "paragraph B" criteria at steps two and three "are not an RFC assessment but are used to rate the severity of mental impairment(s)." SSR 96-8p, 1996 SSR LEXIS 5, at *13. In contrast, the mental RFC assessment used at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments[.]" *Id*. In *Wells*, the ALJ found at step two that the claimant had "mild" limitations in three functional areas and no limitation in the fourth area. 727 F.3d at 1068. The court emphasized that relying on step two findings to formulate the RFC is reversible error:

>[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four

8

> and five.  In his RFC assessment, the ALJ must consider the combined
> effect of all medically determinable impairments, whether severe or not.
> 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Here, after stating his conclusion
> that Ms. Wells' mental impairments were non-severe, the ALJ stated that
> "[t]hese findings do not result in further limitations in work-related
> functions in the [RFC] assessment below."  Aplt. App., Vol. I at 30, 40.  He
> then reiterated his conclusion that the mental impairments were non-
> severe.  *See id.*  The language used suggests that the ALJ may have relied
> on his step-two findings to conclude that Ms. Wells had no limitation
> based on her mental impairments.  If so, this was inadequate under the
> regulations and the Commissioner's procedures.

*Id*. at 1068–69 (alterations in original).  The court nevertheless noted that at step four the ALJ "did . . . separately discuss Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination" and that "[t]his discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment." *Id*. at 1069.  Because the case was reversed on other grounds, the court did not ultimately determine whether the ALJ's step four discussion was sufficient.  *Id*.  However, unpublished Tenth Circuit and district court decisions have since found reversible error where the ALJ failed to discuss mental impairments separately at step four.  *See, e.g.*, *Grotendorst v. Astrue*, 370 F. App'x 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided . . . that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration.  This was reversible error."); *T.L.S. v. O'Malley*, 2024 U.S. Dist. LEXIS 26813, at *10 (D. Colo. Feb. 15, 2024) (finding reversible error where the ALJ "appear[ed] to rely on the step two

finding concerning Plaintiff's mental impairments, and not the more rigorous assessment of those impairments required at step four"); *Stephanie G. v. SSA*, 2022 U.S. Dist. LEXIS 16301, at *11–12, 15 (D. Kan Jan. 28, 2022) (finding reversible error with virtually identical language to the present case).

In this case, although the ALJ correctly noted that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" than at step two, AR at 23, no additional assessment followed. Unlike in *Wells*, the step four analysis in this case contains absolutely no discussion of Plaintiff's mental impairments, detailed or otherwise. *See* AR at 25–29; *c.f. Wells*, 727 F.3d at 1069. Of course, the ALJ was not required to incorporate mental limitations in the RFC, and—as the Commissioner urges—might reasonably have chosen not to do so. But she *was* required to consider them separately at step four, and there is no indication that she did so here. *C.f. Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (finding no reversible error where "[a]t step four, the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment on the RFC"). In fact, the ALJ stated that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," AR at 23, which suggests—in the absence of additional discussion—that Plaintiff's RFC

is based solely on the step-two analysis.

The undersigned therefore concludes that the ALJ improperly "relied on [her] step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," *Wells*, 727 F.3d at 1069; *see also Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (finding under similar facts that "the ALJ failed to employ the step-four analytical procedure prescribed by the regulations"). Although the Commissioner provides several reasons to conclude that Plaintiff's mental impairments did not result in functional limitations, *see doc. 17* at 14, the Court cannot substitute its own reasoning for that the of the ALJ. Nor can the undersigned determine that the ALJ's error was harmless, in light of the significant record evidence of mental impairments that might reasonably affect the RFC analysis. For instance, Dr. Rodriguez-Herrera opined that Plaintiff had limitations ranging from "mild" to "extreme" in potentially relevant areas such as ability to maintain a regular schedule, ability to sustain an ordinary work routine without the need for special supervision, ability to seek and accept appropriate criticism from supervisors, and ability to maintain social interaction in a workplace. AR at 574–75; *c.f. Alvey*, 536 F. App'x at 794 (ALJ's failure to consider mental impairments at step four was harmless error because "no reasonable administrative factfinder" could conclude, based on the record, that the evidence supported functional limitations).

Because it appears that the ALJ substituted her step-two finding of non-severity

11

for the required analysis of Plaintiff's mental impairments at step four, the Court finds reversible error and will remand for further proceedings.

VI. CONCLUSION

For the foregoing reasons, the Court finds reversible error in the ALJ's decision. Therefore, the Court GRANTS Plaintiff's Motion to Reverse and Remand (*doc. 12*) and REMANDS the case to the Commissioner for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**